STATE of Missouri, Respondent,

v.

Alan Walter COBB, Appellant.

Alan Walter COBB, Appellant,

v.

STATE of Missouri, Respondent.

No. 75685.

Supreme Court of Missouri,
En Banc.

April 26, 1994.

Rosalynn Koch, R. Cristine Stallings, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

HOLSTEIN, Judge.

Defendant Alan Walter Cobb was convicted of driving while intoxicated under § 577.-010, RSMo 1986, and sentenced to four years imprisonment as a persistent intoxicated driving offender under § 577.023, RSMo 1986. On appeal to the Court of Appeals, Eastern District, Cobb argued that the state failed to prove the required number of prior convictions to establish his status as a persistent offender and that the prohibition against double jeopardy prevents the state from proving prior convictions at a subsequent proceeding. He also contended that the trial court should have ordered a new trial because the prosecutor made inappropriate comments during closing argument. The court of appeals, pursuant to Rule 83.02, transferred the case to this Court because of the general interest and importance of the double jeopardy issue. The judgment of conviction is affirmed; the judgment of sentence is reversed, and the case is remanded to the trial court for resentencing.

## I.

### A.

▬ The trial court found Cobb to be a persistent DWI offender because the state proved *two* prior intoxication-related offenses committed within a ten-year period. While Cobb's case was pending before the Court of Appeals, Eastern District, this Court determined in *State v. Stewart*, 832 S.W.2d 911 (Mo. banc 1992), that Missouri's persistent DWI offender statute, § 577.023, can only be invoked by proof of *three* prior convictions committed within a ten-year period. *Id.* at 913. This Court made *Stewart* applicable to all pending cases not finally adjudicated. A case is "pending" until direct review is exhausted, *State v. Sumlin*, 820 S.W.2d 487, 490 (Mo. banc 1991), therefore, Cobb's case, still on direct appeal, is subject to the *Stewart* decision. Cobb correctly argues, and the state concedes, that *Stewart* precludes a finding that Cobb is a persistent offender because the state proved only two prior convictions.

The state invites us to overrule *Stewart*. We decline to do so, being unpersuaded by the state's several arguments, which were carefully considered when we unanimously decided *Stewart* two years ago. Alternatively, the state asks us to remand the case to allow the state the opportunity to prove a third prior conviction. In response, Cobb asserts that a remand for this purpose would violate his Fifth Amendment right to be free from double jeopardy.

### B.

In relevant part, the Fifth Amendment states: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." *U.S. Const. amend. V.* The Fourteenth Amendment extends the double jeopardy prohibition to the states. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

### 1.

In an unbroken chain of authority prior to 1981, the United States Supreme Court held that the Double Jeopardy Clause imposes no absolute prohibition against a harsher sentence on retrial after a defendant has succeeded in having an original conviction set aside. *United States v. DiFrancesco*, 449 U.S. 117, 133, 137–38, 101 S.Ct. 426, 435, 437–38, 66 L.Ed.2d 328 (1980); *Chaffin v. Stynchcombe*, 412 U.S. 17, 23–24, 93 S.Ct. 1977, 1981, 36 L.Ed.2d 714 (1973); *North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969); *Stroud v. United States*, 251 U.S. 15, 18, 40 S.Ct. 50, 51–52, 64 L.Ed. 103 (1919). Notwithstanding these precedents, when a Missouri defendant was convicted of capital murder, sentenced to life imprisonment without

parole for fifty years and the conviction was reversed due to trial error, the United States Supreme Court held in 1981 that the Fifth Amendment prohibited the state from seeking the death sentence on retrial. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). The decision appeared to be based on the rationale that under the Missouri sentencing procedure, a failure to obtain a death penalty at the first trial "constitutes a decision that the state failed to prove its case." 451 U.S. at 443, 101 S.Ct. at 1860. Thus, jeopardy attached and a second sentencing was impermissible. The *Bullington* holding was extended to judge sentencing in *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). But for the fact that the sentencer was a judge, the court noted that the Arizona capital sentencing procedure "did not render the proceeding any less like a trial." 467 U.S. at 210, 104 S.Ct. at 2309.

The court in *Bullington* and *Rumsey* did not overrule *DiFrancesco, Chaffin, Pearce* or *Stroud* but distinguished them:

> In *Pearce, Chaffin* and *Stroud* there was no separate sentencing proceeding at which the prosecution was required to prove—beyond a reasonable doubt or otherwise—additional facts in order to justify the particular sentence. In each of those cases, moreover, the sentencer's discretion was essentially unfettered. In *Stroud*, no standards had been enacted to guide the jury's decision. In *Pearce*, the judge had a wide range of punishments from which to choose with no explicit standards imposed to guide him. And in *Chaffin*, the discretion given the jury was extremely broad.

451 U.S. at 439, 101 S.Ct. at 1858.

*DiFrancesco* was distinguished from *Bullington* on other grounds. In *DiFrancesco*, the statute under consideration provided for a separate and bifurcated sentencing at which the prosecution was required to prove additional facts in order to enhance the range of punishment up to a maximum of twenty-five years. 18 U.S.C. § 3575(b) (1970) (repealed 1986). The *Bullington* court found that because the federal procedure at issue in *DiFrancesco* included appellate review of the sentence on the record of the sentencing court and because "the choice presented to the federal judge under § 3575 is far broader than faced by the state jury at" a capital sentencing, that *DiFrancesco* was distinguishable from *Bullington*. 451 U.S. at 440, 101 S.Ct. at 1859.

2.

■ The question here is whether Missouri's persistent DWI offender sentencing procedure is distinguishable from our capital sentencing procedure to which double jeopardy attaches. Defendant concedes the record below supports a conclusion that he is a prior offender. The range of punishment for a prior offender requires a minimum of forty-eight consecutive hours imprisonment, and such offender may be sentenced to up to a year imprisonment and fined $1,000. §§ *558.011.1(5), 560.016.1(1),* and *577.023.2, RSMo 1986.* By contrast, a persistent offender is guilty of a class D felony and may be sentenced to up to five years imprisonment or fined up to $5,000. §§ *558.011.1(4), 560.011.1(1),* and *577.023.3, RSMo 1986.* The minimum punishment for a persistent offender under § 577.023.3 is one day in jail. There is no significant difference in the form of punishment that may be assessed against a prior offender and the form of punishment that may be assessed against a persistent offender, only a difference in the range of punishment.

In the sentencing of a persistent offender, the trial court's discretion is essentially unfettered. The judge has a wide range of punishment from which to choose and is not inhibited by explicit standards imposed by statute. In addition, as in *DiFrancesco*, the choice presented the trial judge in sentencing persistent offenders is far broader than that faced by a jury in sentencing a defendant to death. For the same reasons that *Bullington* is distinguishable from *DiFrancesco, Pearce, Chaffin* and *Stroud, Bullington* is distinguishable from this case. Therefore, applying the rationale of *Bullington*, double jeopardy does not attach to Missouri's non-capital persistent offender sentencing.

3.

Although the recent case of *Caspari v. Bohlen*, —— U.S. ——, 114 S.Ct. 948, 127

L.Ed.2d 236 (1994), was decided on other grounds, the United States Supreme Court provided guidance to courts faced with the issue of double jeopardy in noncapital cases. As noted in *Caspari,*

> Both *Bullington* and *Rumsey* were capital cases, and our reasoning in those cases was based largely on the unique circumstances of a capital sentencing proceeding ... "[T]he decisions of this court clearly establish that a sentenc[ing in a noncapital case] does not have the qualities of constitutional finality that attend an acquittal."

— U.S. at ——, 114 S.Ct. at 954, quoting *Pennsylvania v. Goldhammer,* 474 U.S. 28, 30, 106 S.Ct. 353, 353–54, 88 L.Ed.2d 183 (1985). We conclude from this language that the United States Supreme Court does not consider a determination of sentencing in a noncapital case as a second trial to which double jeopardy applies. Indeed, the Supreme Court in *Bohlen* spoke approvingly of *DiFrancesco,* where it upheld the constitutionality of 18 U.S.C. §§ 3575 and 3576, statutes authorizing the federal government to appeal a sentence imposed on a defendant charged as a "dangerous special offender," and allowed the court of appeals to affirm the sentence and impose a more onerous sentence or remand to the district court for further sentencing. The *DiFrancesco* sentencing procedure is indistinguishable from the sentencing procedure here. Until it is overruled, its authority is binding on this Court. *U.S. Const., art. VI; Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5 (1958).

### 4.

■ Sentencing in capital cases stands on a different footing than sentencing in noncapital cases. As construed, the Eighth Amendment requires that safeguards be in place to prevent the wanton and freakish imposition of the death penalty. *Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 2762–63, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring). Among the approved safeguards is the requirement of proof of specific aggravating circumstances and an absence of mitigating circumstances that justify the death penalty. *Gregg v. Georgia,* 428 U.S. 153, 197–98, 96 S.Ct. 2909, 2936–37, 49 L.Ed.2d 859 (1976).

In noncapital cases, there is no such requirement.

Once guilt of a crime is determined, a sentence of imprisonment is ordinarily neither cruel nor unusual. Thus, strict sentencing guidelines to prevent Eighth Amendment violations are not implicated. The accused in a noncapital case is not being twice put at risk of a wholly different form of punishment by being resentenced. No constitutional mandate of proof beyond reasonable doubt exists with respect to the range of sentencing in such cases. The statutory procedure for assessing punishment, the factors weighing on punishment and the evidentiary burden to establish those factors are largely matters of legislative discretion. The constitutional double jeopardy prohibition does not speak to sentencing except in capital cases. *See Pennsylvania v. Goldhammer,* 474 U.S. 28, 30, 106 S.Ct. 353, 353–54, 88 L.Ed.2d 183 (1985); *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984).

### 5.

This Court's relevant precedents are quite clear and well-reasoned. In *State v. Johnson,* 485 S.W.2d 106 (Mo. banc 1972), the defendant was charged as a habitual offender under *§ 556.280, RSMo 1969* (repealed 1977). The information alleged four prior convictions, but only two were offered at trial. The defendant was convicted, but the jury made no finding on the habitual criminal charge. On appeal, the conviction was reversed and remanded for new trial. *See State v. Johnson,* 267 S.W.2d 642 (Mo.1954). This Court found no error when, at the second trial, the record of all four convictions was submitted to the jury, and the jury found those four prior convictions:

> "The habitual criminal act goes only to the punishment, not to the guilt or innocence of the accused of the offense on trial...." *State v. O'Brien,* 252 S.W.2d 357, 360. "... [T]he Double Jeopardy Clause of the Fifth Amendment is written in terms of potential risk of trial and conviction, *not punishment ...*" *Price v. Georgia,* 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26

L.Ed.2d 300. "The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict." *Id.*, 398 U.S. [at] 331, 90 S.Ct. [at] 1762. Given such meaning of the Double Jeopardy Clause and the nature of the Second Offender Act, the Double Jeopardy Clause is not here applicable.

485 S.W.2d at 112. Consistent with that holding, see *State v. Kelly*, 753 S.W.2d 71, 73 (Mo.App.1988); *King v. State*, 721 S.W.2d 97, 98 (Mo.App.1986); *State v. Lee*, 660 S.W.2d 394, 399 (Mo.App.1983); and *State v. Cullen*, 646 S.W.2d 850, 856–57 (Mo.App.1982). Thus, both this Court and each of the districts of the court of appeals have held that the constitutional guarantee against double jeopardy is not applicable to a noncapital proceeding to assess punishment.

### 6.

■ In sum, double jeopardy is no obstacle in this noncapital proceeding to permitting the state to present whatever evidence it may have at a resentencing to establish the defendant is, as he was charged and sentenced the first time, a persistent offender.

### II.

■ Cobb's second assignment of error pertains to the closing arguments. He contends that the prosecutor impermissibly suggested that he should be convicted for reasons wholly irrelevant to guilt. In particular, the prosecutor stated:

... He was weaving, and thank God Deputy Moses caught him. We don't know what would have happened after that.... Send a message that [it] is unacceptable to be falling down drunk and driving a car in this county. Send the message to everyone who would think about doing it, to everyone who endangers the lives of other citizens everywhere when they're driving on the highways while intoxicated.

Cobb did not object to these remarks at trial, so we are limited to plain error review under Rule 30.20. In that regard, it is well settled that "[r]elief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation." *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986). Even if a timely objection had been raised, it was not error to permit the remarks. A prosecutor may legitimately argue that the jury should "send a message" that criminal conduct will not be tolerated or should be severely punished. *State v. Olds*, 603 S.W.2d 501, 511 (Mo. banc 1980). Moreover, we do not detect any impermissible design to incite the passions of the jury in the prosecutor's "send a message" argument. Nor do we find, as Cobb urges, that the comment, "[w]e don't know what would have happened after that ..." is an impermissible suggestion that the defendant will engage in criminal conduct in the future. The prosecutor focused only on the possible effects of the conduct with which Cobb was charged, not on any future conduct. For these reasons, we deny Cobb's claim that the state's closing arguments were improper.

### CONCLUSION

The conviction of DWI is affirmed. The sentence of defendant as a persistent DWI offender is reversed. This case is remanded for resentencing with instructions to permit the state to present whatever evidence it has to establish defendant's status as a persistent offender.

COVINGTON, C.J., and BENTON, THOMAS, and ROBERTSON, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

PRICE, J., concurs in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority opinion to the extent that it authorizes the State to introduce new evidence to prove Cobb's status as a persistent offender. As I understand the United States Supreme Court's interpretation of the double jeopardy clause in *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), a remand for this purpose is unconstitutional.

To be sure, the Supreme Court has resisted attempts to apply the double jeopardy clause to sentencing proceedings, as opposed to determinations of guilt or innocence. As stated in *Bullington*, "[t]he imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed." *Id.* at 438, 101 S.Ct. at 1857. In the absence of an 'acquittal,' the Court has not extended double jeopardy protection.

However, after acknowledging this general rule, the Supreme Court in *Bullington* distinguished earlier opinions on which the rule is based and applied double jeopardy principles to Missouri's sentencing procedures in death penalty cases. The Court determined that the Missouri sentencing hearing "resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence," and "[i]n contrast, the sentencing procedures considered in the Court's previous cases did not have the hallmarks of the trial on guilt or innocence." *Id.* at 438–39, 101 S.Ct. at 1858. Therefore, under *Bullington*, double jeopardy protection attaches to sentences imposed after a trial-like hearing.

The Supreme Court pointed to several features of Missouri's death penalty scheme that imbued the sentencing proceeding with trial-like characteristics, the most important of which is the State's obligation to prove certain aggravating circumstances in order to justify imposition of the death penalty. The Court explained:

> In the usual sentencing proceeding, ... it is impossible to conclude that a sentence less than the statutory maximum "constitute[s] a decision to the effect that the government has failed to prove its case." ... By enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, however, Missouri *explicitly requires* the jury to determine whether the prosecution has "proved its case."

*Id.* at 443–44, 101 S.Ct. at 1860–61. (Citations omitted.) The Court then held that the imposition of a life sentence is, in effect, an acquittal of "whatever was necessary to impose the death sentence." *Id.* at 445, 101 S.Ct. at 1861.

Missouri's enhanced sentencing scheme for persistent DWI offenders is similar to the sentencing scheme in first degree murder (capital murder) cases. The State must prove three alcohol-related convictions within a ten-year period before a defendant may be classified as a persistent offender and subject to enhanced punishment, just as the State must prove, in the first degree murder context, certain aggravating circumstances before the defendant is subject to the death penalty. §§ 577.023.1, 565.032, RSMo 1986. In each proceeding, the State's proof must be established "beyond a reasonable doubt," §§ 577.023.4(2), 565.030.4(1), RSMo 1986, and the defendant must be accorded rights of confrontation and cross-examination, with the opportunity to present evidence. §§ 577.-023.4(7), 565.030.4, RSMo 1986. That the sentence in Cobb's case was imposed by the trial judge rather than the jury does not render the proceeding any less "trial-like." *Arizona v. Rumsey*, 467 U.S. 203, 210, 104 S.Ct. 2305, 2309–10, 81 L.Ed.2d 164 (1984). Applying the rationale in *Bullington*, I conclude that Missouri's persistent DWI offender procedure is "trial-like" and that the State's failure of proof in that procedure is, in effect, an acquittal on the question of persistent offender status.

The majority in this case tacitly assumes that the "trial-like" rationale applies only to death penalty cases. However, in the recent case of *Bohlen v. Caspari*, —— U.S. ——, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), the United States Supreme Court expressly declined to decide whether the *Bullington* rationale applies to sentencing procedures in noncapital cases as well as capital cases, thus leaving the question open for future litigation. Nevertheless, the majority relies on the following dicta from *Bohlen*:

> Both *Bullington* and *Rumsey* were capital cases, and our reasoning in those cases were based largely on the unique circumstances of a capital sentencing proceeding ... '[T]he decisions of this Court clearly establish that a sentenc[ing in a noncapital

case] does not have the qualities of constitutional finality that attend an acquittal.' *Bohlen,* —— U.S. at ——, 114 S.Ct. at 954.

The majority's reliance on *Bohlen* is mistaken. The *Bullington* rationale is that double jeopardy protection attaches because of "trial-like" sentencing procedures, and the fact that *Bullington* was a capital case does not have any bearing on the integrity of that rationale. The "unique circumstances" to which *Bohlen* refers are the "trial-like" aspects of the sentencing proceeding. The "qualities of constitutional finality that attend an acquittal" pertain, most importantly, to the State's failure to prove facts necessary to support a particular sentence or range of punishment. That failure of proof, in other words, gives rise to a double jeopardy-triggering acquittal on the sentence or range of punishment sought by the State.

As a general rule, sentencing proceedings in noncapital cases do not involve "trial-like" characteristics, the judge merely imposes a sentence within the designated range of punishment. Because the State is not required to prove any facts to support the sentence or range of punishment, there can be no failure of proof, and thus, no acquittal. On the other hand, persistent offender status is litigated, as explained above, in a "trial-like" hearing in which the State must prove the requisite prior offenses that support the status and the attendant increased range of punishment.

The *Bullington* rationale is not limited to death penalty cases. Had the Supreme Court in *Bullington* intended to impose a special rule of double jeopardy to death penalty cases, just because they are death penalty cases, it could have done so. Instead, the Court fashioned a rationale that is not dependent on the fact that the death penalty might be imposed, a rationale that logically applies to all cases having "trial-like" sentencing procedures. I am unwilling, therefore, to join the majority in its unfounded limitation of *Bullington.*

The majority also misinterprets *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), by declaring that "[t]he *DiFrancesco* sentencing procedure is indistinguishable from the sentencing procedure here." The issue in *DiFrancesco* is completely different from the issue before this Court. The defendant in *DiFrancesco* was adjudged to be a "dangerous special offender" under 18 U.S.C. § 3576 (repealed), thereby entitling the government to appeal the sentence. The defendant challenged the appellate review of his sentence on double jeopardy grounds. He did not challenge the sufficiency of the government's evidence to support the "dangerous special offender" classification. Indeed, the government, in the first instance, proved that the defendant was a "dangerous special offender," and there was no need for a second determination of the defendant's status. In the case before this Court, however, Cobb claims that the double jeopardy clause prevents the State from retrying his status as a persistent offender. This is the same difference of issues that the Supreme Court used in *Bullington* to distinguish it from *DiFrancesco. Bullington,* 451 U.S. at 440, 101 S.Ct. at 1858–59.

Because *Bullington* controls the disposition of this case, I dissent from the portion of the majority's opinion remanding the case for a new persistent offender hearing. I would remand solely for the purpose of sentencing Cobb as a prior offender. I join the majority in all other respects.