**STATE of Missouri, Respondent,**

v.

**Verlie NORTON, Appellant.**

**No. WD 52497.**

Missouri Court of Appeals,
Western District.

Aug. 5, 1997.

Rosemary E. Percival, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

LOWENSTEIN, Judge.

Verlie Norton was charged as a prior offender, tried, and found guilty by a jury of the following charges: first degree burglary, first degree robbery, attempted forcible sodomy §§ 564.011 & 566.060, forcible sodomy, § 566.060, second degree assault, sexual abuse, felonious restraint, and six counts of armed criminal action. The court sentenced Norton on 10 counts to run concurrently and 3 counts to run consecutively; all totaling a sentence of Life plus 75 years. The sufficiency of the evidence is not in question.

Mr. Lin Zhou, a Chinese visiting professor at the University of Missouri—Kansas City, rented a room at 5656 Kenwood in May 1995.

Zhou returned to his home after working late at the University, unlocked the door, and entered his dark apartment. Norton jumped Zhou and held a meat cleaver to his face demanding Zhou's money. Zhou gave him his wallet (containing $30) and his watch. Norton ordered Zhou into his bedroom and demand he remove his pants and underwear. Norton removed his own pants, still holding the cleaver to Zhou's face, and demanded Zhou hold his penis, which he did. Norton forced his penis into Zhou's mouth. Appellant, still holding the meat cleaver, then told Zhou to bend over the bed. Norton proceeded to sodomize him for five to ten minutes. Norton forced Zhou into the bathroom waved the cleaver at him and in the process, cut Zhou's hand. Zhou was forced to sit on the toilet while Norton washed himself with a towel. Still carrying the cleaver, Norton forced Zhou back into the bedroom and demanded money and ropes to tie him up. Appellant cut several electrical cords and tied Zhou's hands and ankles behind his body, gagged him, and left him on the bed. Norton went to the kitchen, got a beer, and returned to the bedroom where he drank the beer. Norton laid down in bed behind Zhou, putting his penis between Zhou's legs (which were still tied together), and ejaculated on Zhou's legs and back. Norton began falling asleep. Zhou managed to get his hands free and grabbed the cleaver from Norton's hands. After a struggle, Zhou kicked Norton in the stomach and shouted that he wanted him to leave. Norton asked for a clean tee shirt and left, taking Zhou's wallet and watch. Because Zhou did not speak much English, he called a friend who phoned police and told them what happened.

Norton relies on five points in his appeal:

1) Trial court plainly erred in failing to declare a mistrial sua sponte when a police detective testified that Norton failed to respond when confronted with the allegation of Zhou's sodomy because the detective's testimony constituted an impermissible comment on Norton's post-arrest silence.

2) Trial court abused its discretion in failing to declare a mistrial after the state elicited testimony drawing an adverse

inference from Norton's failure to have independent genetic testing performed on crime evidence in order to prove his innocence.

3) Trial court abused its discretion in overruling Norton's objection to the state's closing argument where prosecuting attorney said the jury should "send a message" to Norton and people like him who, "break into our homes and rob us and sodomize us and tie us up and terrorize us and cut us up with meat cleavers," because it improperly inflamed the passion of the jurors by emphasizing their personal fear of Norton.

4) Trial court erred in failing to declare a mistrial after a state's witness testified that Norton's fingerprints were stored in the ID unit of the Kansas City Police Department, and were taken when Norton "came into the system," indicating that Norton had been previously arrested. Appellant claims this was not strictly necessary to prove the charges against him, and only served to prejudice the jury.

5) Trial court erred in accepting the jury's verdict assessing punishment and sentencing Norton to seventy-five years on Count III, armed criminal action, because the sentence exceeded the statutory range of punishment.

■ In his first point, appellant argues the trial court committed plain error in failing to declare a mistrial after a state's witness commented on Norton's silence while being questioned by police—the prosecutor implied in closing argument that Norton's silence indicated consciousness of guilt. The state's witness, Detective Fitzner, testified to questioning Norton about whether he had ever been in Mr. Zhou's apartment, which Norton denied. The detective then told Norton of Mr. Zhou's allegations of sodomy, to which Norton made no response. In closing argument, the prosecutor again referred to Norton's silence. "... [A]nd [the officer] tells him—informs him of what the allegations are and at that point he doesn't have a word to say." Defense counsel failed to object to the elicited testimony and the prose-

cutor's closing argument but did allege error in the motion for a new trial, therefore, this point may only be reviewed for plain error under Rule 30.20. Plain error relief will only be granted in cases where this court is left with the firm impression that manifest injustice or a miscarriage of justice has occurred. *State v. Clemmons,* 753 S.W.2d 901, 907 (Mo. banc 1988). The declaration of a mistrial is a drastic remedy appropriate only in the most extraordinary circumstances in the discretion of the trial court. *State v. Sidebottom,* 753 S.W.2d 915, 919–20 (Mo. banc 1988).

■ As a general rule, an accused's silence while he is under arrest is not admissible against him because he is under no duty to speak. *State v. Frentzel,* 717 S.W.2d 862, 866 (Mo.App.1986). "An accused's failure to volunteer an exculpatory statement or deny or explain an incriminating fact—while he is under arrest—is inadmissible." *Id.* However, this rule does not apply where the accused waives his Fifth Amendment privilege by making statements while in custody. *Id.* (citations omitted.) Where an accused, in custody and previously informed of his *Miranda* rights, answers questions or makes statements, he has elected not to remain silent and has waived his right to do so.

■ Appellant was arrested and given *Miranda* warnings prior to the detective's questioning. Norton initially waived his right to remain silent by answering the detective's questions, he only became silent when informed of the allegation. The state, relying on *State v. Crow,* 728 S.W.2d 229, 230 (Mo. App.1987) and *State v. Frentzel,* 717 S.W.2d 862, 866 (Mo.App.1986), argues that the prohibition against using a defendant's post-arrest silence has no application once the defendant elects not to remain silent.

*State v. Frentzel,* 717 S.W.2d 862 (Mo.App. 1986), is factually similar to the case at bar and provides persuasive authority for the state's position. In that case, the defendant was charged with possession of burglar's tools. After his arrest, the defendant was questioned about his possession of money, liquor, and tools in his vehicle. The defendant offered an explanation for the money and liquor, but not the tools. The court held

that the state could fairly comment in the opening portion of closing argument on the defendant's failure to explain the tools. The facts of this case are similar to *Frentzel* in that Norton was arrested, Mirandized, and then questioned. Norton answered the initial question of whether he had ever been to Zahn's address in the negative, then became silent as to the specific allegations of the attack and sodomy. Norton never affirmatively asserted his Fifth Amendment right. He simply did not respond to questions about the specific allegations after waiving his right to invoke the protection of the Fifth Amendment right against self incrimination. This court holds that Norton waived his Fifth Amendment privilege and that the state may comment on his subsequent silence during police questioning.

■ Furthermore, this court holds that even if Norton had not waived his right to remain silent, there would be no manifest injustice in the trial court's failure to declare a mistrial where eye-witness testimony as well as blood and fingerprint evidence indicate Norton's culpability. In short, there was overwhelming evidence against Norton and any error did not alter the result of the trial. Point denied.

■ In his second point, Norton claims the trial court abused its discretion in failing to grant a mistrial after the prosecutor elicited the following testimony from his DNA expert:

Q. After this DNA was extracted on this particular case, was there extra DNA left over that was not extinguished by your testing to provide to the defense in this case for simultaneous testing and frequency calculations?

A. In some of the samples there was left over DNA for testing and in the semen stains from the blanket and the pants, there were leftover stain material for re-testing.

Q. Did you disclose that fact to the defendant in court at the beginning of this case many months ago?

A. Yes, I did.

Q. Were you ever contacted by the defense in this case to release these leftover samples for independent testing by a lab of the defense's choosing?

A. No.

The state argues the preceding testimony was admissible under the doctrine of curative admissibility which provides "where the defendant has injected an issue into the case, the state may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *State v. Lingar,* 726 S.W.2d 728, 734–35 (Mo. banc 1987), cert. denied, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). Essentially, the state posits that defense counsel's argument which asserted the state's DNA evidence was "not infallible" opened the door to the state's pointing out the absence of independent testing by the defense. This court is not persuaded. Defense counsel's argument only promised to attack the state's method and the results of testing and did not indicate the defense would produce its own test evidence. The doctrine of curative admissibility is inapplicable under these circumstances.

■ At the bench, Norton's counsel stated the expert's testimony shifted the burden of proof and moved for a mistrial. There is a question as to whether Norton's counsel objected or only moved for a mistrial. Counsel's complaint that the testimony shifted the burden and should be reviewed as an objection and a motion for a mistrial, as a mistrial would only be appropriate after an objectionable event.

■ As a general rule, an objection must be made at the earliest opportunity or it will be held to have been waived. *State v. Edwards,* 650 S.W.2d 655, 661 (Mo.App.1983). In this case, Norton's objection was not timely because the question had already been answered. Assuming that Norton's objection had been timely, this court finds that the remedy of a mistrial would not be proper. The declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Schneider,* 736 S.W.2d 392, 400 (Mo. banc 1987). In addition, the trial court has discretion in deciding whether to grant a

mistrial. *Schneider*, 736 S.W.2d at 400—401. The trial court is in a better position to judge the prejudicial effect of the prosecutor's questions and the witness's response. This court finds no abuse of discretion in the denial of defendant's request for a mistrial. Point denied.

■ In his third point, Norton claims the trial court abused its discretion in overruling his objection to the following portion of the state's closing argument:

> You can come back with maximum penalties in this case and send a message to [Mr. Norton] and any other person who's lurking out in Jackson county thinking they are going to break into our homes and rob us and sodomize us and tie us up and terrorize us and cut us up with meat cleavers....

■ Defense counsel's objection on the basis of improper personalization was overruled. On appeal, Norton claims the state improperly sought to inflame the passion of the jurors by emphasizing their personal fear of appellant. Determining the prejudicial effect of closing argument is a matter within the sound discretion of the trial court, and its judgment will not be disturbed unless there was a clear abuse of discretion. *State v. Gola*, 870 S.W.2d 861, 865 (Mo.App.1993).

■ In closing, a prosecutor is permitted to argue general propositions regarding the prevalence of crime in the community, the personal safety of the community's citizens, and the jury's duty to uphold the law including references regarding the jury's failure to convict and pleas to the jury's common experience. *Id.* at 865. The prosecutor may not personalize his argument to the jury by suggesting personal danger to jurors or their families if defendant were to be acquitted. *State v. Lopez*, 898 S.W.2d 563, 570 (Mo.App.1995).

■ A prosecutor may legitimately argue that the jury should send a message that criminal conduct will not be tolerated or should be severely punished. *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994). In *State v. Hatcher*, 835 S.W.2d 340, 344 (Mo. App.1992), where appellant was convicted of possession of cocaine. The prosecutor's clos-ing argument referred to the war on drugs and included the following:

> I would ask you to convict this defendant and show the people that we don't tolerate cocaine in our community, that we don't want our families exposed to this kind of thing. We don't want our children growing up with cocaine, and the way you send that message in a case like this is, first of all, you convict the defendant; and secondly, you assess the punishment that will get the attention and deter people from bringing drugs into this community.

The *Hatcher* court found the argument was not improper and did not provide a basis for reversal because it did not suggest personal danger to the jurors or their families, nor did it suggest the defendant's particular criminal proclivities and the need to deter his commission of future crimes. *Hatcher*, 835 S.W.2d at 344.

*State v. Long*, 684 S.W.2d 361, 363—64 (Mo.App.1984) presents a case of improper personalization. The prosecutor asked the gentlemen of the jury to imagine themselves as victims of a brutal rape then proceeded, over several objections, to describe every detail of the rape while using the words you and your. For example, the prosecutor asked the jury to imagine that a man "... kicks you a couple of times in the head and stomach and takes off your pants, he doesn't fondle you, he grabs you, twists you, squeezes to hurt you...."

■ In the case at bar, the prosecutor's argument combined elements of both "send a message" and personalization. The prosecutor asked for maximum penalties and for the jury to "send a message" to Norton and others in Jackson County who could "break into *our* homes and rape *us* and sodomize *us* ..." The references to "us" and "our" does personalize the argument, but can also be interpreted to refer to the citizens of Jackson County. In any event, this court finds the prosecutor's argument, though close to the limit of propriety, is not reversible error. It did not reach the level of the *Long* case or others where the argument was so detailed and emotional that it required reversal. The prosecutor here focused on the necessity of

law enforcement in Jackson County, and the personal safety of its inhabitants. He did not ask the jurors to imagine themselves the victims in a detailed recitation of the crime. Legitimate arguments against violent crime which are not focused on inciting fear of the defendant or fear that the defendant's acquittal will endanger their own personal safety will be permitted. *State v. Plummer*, 860 S.W.2d 340, 350 (Mo.App.1993). Point denied.

■ In his fourth point, Norton claims the trial court plainly erred in failing to declare a mistrial *sua sponte* after a state witness testified that Norton's fingerprints were stored in the identification unit of the Kansas City, Missouri Police Department and were taken at the time appellant "came into the system." Appellant argues that this testimony indicated to the jury that appellant had been arrested previously and constituted inadmissible evidence of other criminal activity and resulting in manifest injustice. As appellant notes, this matter was not objected to at trial and, therefore, is not properly preserved. This court will review the point for plain error under Rule 30.20. Again, whether to grant a mistrial rests in the discretion of the trail court which is in the best position to determine what prejudicial effect, if any, an incident has on the jury. *Schneider*, 736 S.W.2d at 401.

■ Defendants in criminal cases have a right to be tried only for the offense for which they are charged. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989). The rule is violated where evidence shows the defendant has "committed, been accused of, been convicted of, or definitely associated with another crime or crimes." *Id.* at 96 (citation omitted). "[V]ague references cannot be characterized as clear evidence associating [the defendant] with other crimes." *Id.* at 96 (citations omitted). This court finds no manifest injustice in the trial court's failure to sua sponte declare a mistrial under these circumstances.

■ In his final point, appellant challenges the trial court's decision to abide the jury recommendation and sentence him to 75 years on Count III, armed criminal action.

Norton contends that 75 years exceeds the maximum allowable penalty which he argues would be life or 30 years.

The armed criminal action statute, 571.015, RSMo 1994, indicates it is an unclassified felony and specifically provides as follows:

1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human resources for a term of not less than three years.

The statute indicates a minimum sentence of three years but does not state a maximum penalty. *Thurston v. State*, 791 S.W.2d 893, 895 (Mo.App.1990) noted, "[t]he absence of a stated maximum penalty merely indicates a legislative intent that a defendant convicted of the offense may be sentenced to *any* term of years above the minimum, including life. (Emphasis added)." The *Thurston* court upheld a life sentence, but did not hold life to be the maximum sentence. In fact, *State v. Stoer*, 862 S.W.2d 348, 353 (Mo.App.1993) upheld a 100 year sentence. Therefore, we hold that Norton's 75 year sentence for armed criminal action does not exceed the maximum statutory penalty.

All concur.