MID–AMERICAN LINES, INCORPO-
RATED, and Robert Antoine,
Appellants,

v.

Max LITTRELL and James
Littrell, Respondents.

No. WD 33769.

Missouri Court of Appeals,
Western District.

June 7, 1983.

Frank J. Murphy of Hillix, Brewer, Hoff-haus & Whittaker, Kansas City, for appellants.

Phillip S. Smith of Morris & Foust, Kansas City, for respondents.

Before SOMERVILLE, C.J., and TUR-NAGE and MANFORD, JJ.

MANFORD, Judge.

Plaintiffs-appellants seek recovery of damages pursuant to § 270.010, RSMo 1978 as a result of a horse owned and maintained by defendants-respondents, striking a truck owned by Mid-American Lines, Inc. and operated by Robert Antoine. The jury returned its verdict in plaintiffs' favor, awarding $28,800 to Mid-American and $1,000 to Antoine. The trial court sustained defendants' motion for new trial. Plaintiffs proceeded with this appeal and seek restoration of the jury verdict pursuant to § 512.020, RSMo 1978. The order of the trial court granting defendants a new trial is reversed and the cause is remanded to the circuit court with directions to reinstate the jury verdict in favor of the plaintiffs.

As their sole point on this appeal, plaintiffs charge that the trial court erred when it sustained defendants' motion for new trial. This ruling was based on a finding that the description testimony of a plaintiffs' witness relative to the condition of a gate owned by defendants was remote in time.

The record reveals the following pertinent facts.

At about 3:00 a.m. on November 28, 1978, Robert Antoine left Kansas City, Missouri, operating a truck owned by Mid-American Lines and loaded with flour. At a speed of 55 m.p.h. or less, the truck approached the intersection of Highway 65 and Highway 36 just outside Chillicothe, Missouri. At that point, something "came in from the left side of his truck, hit near or under the left door, knocked the steering out and caused him to lose control of his truck." The truck veered to the left into the median, crossed the intersection, "crashed over", and came to a stop on the other side of the highway.

Antoine escaped from the truck by kicking out the windshield. A short time later,

another truck driver stopped. Antoine and the other driver investigated the area, and discovered that a horse had hit the truck. Another horse was running loose near the highway. Ownership of the horses was traced to defendants who were notified of the collision. Defendants went to their pasture and found the northwest gate wide open.

This gate became a focal point of the trial. It was one of two gates on the land, and as noted, located at the northwest corner of the pasture. The gate was a metal galvanized steel type with horizontal panels and supporting cross pieces. The gate was used once or twice a year for purposes of entry and exit to allow for the mowing of the pasture.

Evidence relative to the construction, operation, and condition of the gate and its latching mechanism was introduced by witnesses for both parties. Plaintiffs' witness, Jack Stevens, was ultimately permitted to testify for plaintiff as a *rebuttal* witness. The import of his testimony is summarized as follows: Stevens examined the latch to the gate on June 29, 1979, some six months subsequent to the collision between plaintiffs' truck and defendants' horse. Stevens stated that the wood, where the bottom part of the hasp was affixed (or should have been affixed), was not a fence part but was two-dimensional lumber. This lumber was described as a No. 2 construction grade 2″ × 4″. There were a total of three 2″ × 4‴'s nailed or secured to a hedge post. The area, where the nail hole for the bottom part of the hatch should have been, contained only a slight indentation and not a nail hole. This indentation did not exceed a ⅟₃₂″ depth, and did not reach a diameter the size of a nail shank. The hasp had no nail in it and none was found in search of the ground around the gate. By witness Stevens, plaintiffs had a photographic exhibit of the gate representing the condition of the gate at the time it was observed by Stevens.

The evidence closed. The jury returned its verdict, awarding damages to plaintiff Mid-American in the sum of $28,800 and to plaintiff Antoine for $1,000.

Defendants filed their motion for new trial in which they alleged that Stevens should not have been permitted to describe the gate and latch, and that the photograph of the gate and latch should not have been admitted. The reasoning supporting this allegation was that the examination and photograph were too remote, i.e., the collision occurred on November 28, 1978, and the examination and photo were accomplished on June 29, 1979. The trial court agreed and granted defendants a new trial. This appeal followed.

As suggested in appellant's argument, the question regarding the Stevens testimony and the photograph is one of relevancy. From the evidence upon the record, it is clear that defendants' testimony, as well as the Stevens testimony regarding the gate, albeit contrary, was directed to the construction and condition of the gate. Defendants' position is that the Stevens testimony and the supporting photo were so remote (i.e., six months following the collision) that they rendered both the testimony and the photo inadmissible. This same challenge was rejected at trial when Stevens was permitted to testify.

■ From the record, the following conclusions can be reached. There is no evidence that between the time of the collision and the Stevens examination any changes had occurred to the gate or its latch. The evidence supports the contrary conclusion— that no changes to the gate or its latch occurred during this time interval. Thus, defendants on this appeal, and the trial court, upon ruling the motion for new trial, stand convinced that the mere passage of time rendered the Stevens testimony and the photo inadmissible. Both the trial court and defendants are in error.

As noted above, the evidence upon the record supports the conclusion that in the interim period between November 28, 1978 and June 29, 1979, no changes occurred to the gate and latch. The evidence forces the conclusion that the gate and latch were in

the same condition on June 29, 1979 as they were on November 28, 1978.

The evidence reveals that there was sufficient foundation for the Stevens testimony and for introduction of the photo. This being so, the photo was admissible as an exhibit. *State ex rel. State Highway Commission v. Eilers,* 406 S.W.2d 567 (Mo.1966). Defendants' objection of remoteness went to the weight of the Stevens testimony and the photo, not to their admissibility. *Eilers* at 571.

 In addition to his testimony concerning his examination of the gate and latch, Stevens was asked if he took a photo of the gate and latch. He responded affirmatively. He was then asked to identify a photo of the gate and latch, and as part of that identification, he was asked, "Does that photograph fairly and accurately represent what you observed?". He answered, "it does." Plaintiffs then tendered the photo as an exhibit, to which defendants raised their objection on the basis of remoteness and failure to "show sameness or similarily [sic]." The objection was overruled and the photo admitted. The trial court's overruling of defendant's objection was correct because the photo was admissible upon Stevens' testimony that the photo fairly and accurately represented what he observed concerning the condition of the gate and latch. The passage of time alone is insufficient to support an objection of remoteness, see *Williamson v. St. Louis Public Service Co.,* 363 Mo. 508, 252 S.W.2d 295, 302 (1952). In *Williamson,* the testimony of a photographer, including his testimony that the picture taken was "a fairly true and accurate representation of the condition of the street as it existed that day", was declared admissible. The instant case, as regards the Stevens testimony and the photo, falls squarely within the rule in *Williamson.*

As noted above, the trial court properly overruled defendants' objection to the Stevens testimony and to the photo, and properly ruled that both were admissible. The weight and credibility of both fell within the province of the jury as factfinder.

The trial court erred when it sustained defendants' motion for new trial, upon its subsequent decision that the Stevens testimony and photo were inadmissible because of remoteness.

The judgment, in the form of an order of the trial court granting defendants' motion for new trial, is in all respects reversed. This cause is remanded to the circuit court with directions, and for the express purpose of reinstating the jury's award in favor of the plaintiffs, in the original sum.

All concur.