**STATE of Missouri, Respondent,**

v.

**Vincent CRUZ, Appellant.**

**No. WD 53999.**

Missouri Court of Appeals,
Western District.

July 21, 1998.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Seth A. Albin, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Vincent Cruz appeals his convictions for two counts of burglary and two counts of stealing over $150.00. On appeal, Mr. Cruz claims that the trial court plainly erred in allowing the prosecuting attorney, in the rebuttal portion of his closing argument, to inform the jurors that when determining Mr. Cruz's guilt they must answer to the community for their decision. He also contends that the trial court committed plain error in allowing Carolyn Wible to offer hearsay testimony that, to her knowledge, Robert Armstrong did not give anyone permission to enter her home. Finding no plain error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Vincent Cruz paged David Kindred at approximately 7:15 a.m. on September 18, 1995. Although David had been in the process of driving Thomas Pace to school, when he got the page he and Thomas instead drove to a QuickTrip, where they met with defendant Cruz. From there, David Kindred drove the other two to a hotel on Front Street, where Thomas Pace stole a minivan from the parking lot. David and defendant Cruz then drove some 45 minutes until they reached 11410 and 11420 Northwest Robinhood Lane in rural Platte County. Thomas Pace followed in the minivan.

Carolyn Wible is the owner of the home at 11410 Robinhood Lane. She lives at the address with her fiance, Robert Armstrong. Ms. Wible and Mr. Armstrong went to work that morning, leaving the house vacant. Ms. Wible testified at trial that she did not give anyone permission to enter or take anything from her home. Ms. Wible further testified that, to her knowledge, neither did Mr. Armstrong.

Defendant Cruz and David Kindred nonetheless approached the front door of Ms. Wible's house and defendant unsuccessfully attempted to break down the door. In the process of his attempt, defendant managed to break a panel on the door and to leave his footprint on the panel. Eventually, David Kindred climbed through a window on the side of the house and opened the door for defendant. The two took six guns valued at $2000.00, ammunition, an ammunition bag, and electronics. They put the items in Mr. Kindred's car.

Carolyn Reed lives next door to Carolyn Wible at 11420 Robinhood Lane. She also left for work before defendant arrived, leaving no one in her house. She gave no one permission to enter or take anything from the house. At the same time that defendant and David Kindred were burglarizing the Wible home, Thomas Pace broke into Ms. Reed's house and began carrying out electronic equipment. After leaving Ms. Wible's house, defendant helped Thomas carry a television and speakers out of Ms. Reed's house. When the three had completed this task, they all drove to 403 Oakley, which was the home of another friend, Falconer Leslie. After they unloaded some of the stolen items, Thomas Pace finally went to school, while defendant and David Kindred drove to defendant's home at 1826 Cambridge.

Defendant's girlfriend, Swana Lansdown, helped David Kindred take some of the stolen items to her home at 1803 Cambridge and unload them. A neighbor, Eddie Sankaruala, became suspicious when he saw them unloading the items and called the police. The two had left by the time police arrived at 1803 Cambridge, but Swana Lansdown's father gave the police permission to search the house. The police found three of Mr. Arm-

strong's guns, ammunition, an ammunition bag that contained an address tag with Robert Armstrong's name and his Robinhood Lane address, and a stereo. They also obtained a number of fingerprints for later analysis. The police obtained additional fingerprints at Falconer Leslie's home.

The police arrested David Kindred later on the day of the burglaries. He gave a statement in exchange for a more lenient sentence. He revised his statement twice as the police found more evidence. In each of these statements, David indicated that defendant Cruz was involved in the burglary and stealing. Defendant was arrested two days later. He denied his involvement in the crimes. When tests revealed that a partial print on the ammunition collected by the police belonged to him, defendant claimed that he must have left his print there when David attempted to sell him the stolen ammunition. He said he looked through the ammunition but decided not to buy any.

Defendant was tried on two counts of burglary in the second degree and two counts of stealing. He was found guilty on all counts. The court sentenced him to four years imprisonment on each of the two counts of burglary, and to three years imprisonment on one count of stealing and two years on the other, and ordered each sentence to run consecutively. This appeal followed.

## II. INFLAMING THE PASSIONS OF THE JURY IN THE REBUTTAL PORTION OF THE PROSECUTOR'S CLOSING ARGUMENT

█ As his first point on appeal, Mr. Cruz claims that the trial court erred in allowing the prosecuting attorney, Mr. Ketchmark, to state in closing argument that:

> "you 12 individuals who are empowered and have the duty to set the standard that this community has to go by, in dealing with people like Mr. Cruz, who come up from Jackson County and break into our homes, steal out items, take 'em back down and do whatever with them. **It's you all that have to answer to the community** and set the standard."

(emphasis added.) Defense counsel did not object to this argument, but defendant now requests that this Court find that the trial court plainly erred in not *sua sponte* granting a mistrial based on this statement by the prosecutor. Plain error is only found where the comment resulted in manifest injustice, however, and "statements made in closing arguments rarely affect substantial right or result in manifest injustice or the miscarriage of justice so as to result in plain error requiring reversal of a conviction." *State v. Higgins,* 619 S.W.2d 94, 95 (Mo.App.1981).

█ Furthermore, courts hesitate to find plain error in a failure to *sua sponte* correct a statement made during closing arguments because "trial strategy looms as an important consideration in deciding whether to object during closing argument." *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994). The court, therefore, runs the risk of creating error if it interferes with argument *sua sponte.* For this and similar reasons, errors occurring in closing arguments justify "relief under plain error only when the errors are determined to have a decisive effect on the jury. The burden is on the defendant to demonstrate the decisive effect" of the statement. *State v. Girardier,* 801 S.W.2d 793, 796 (Mo.App. 1991).

We agree with defendant that the prosecutor's remark in this case differs in kind from the cases cited by the state for the proposition that a prosecutor can ask the jury to send a message to the community that particular conduct will not be tolerated. Here, the prosecutor said that the jury, not lawbreakers, would have to answer to the community. A similar comment, also implying that the jury would have to justify an acquittal to their friends, was condemned in *State v. Thomas,* 780 S.W.2d 128, 134–35 (Mo.App. 1989), on the basis that it implied to the jury that it should decide the case based on how the community would respond to the verdict rather than based on the evidence in the case. The comment in this case could be subject to the same interpretation. If, as the State suggests, the prosecutor simply wanted to tell the jury that they should send a message to the community, then, in the fu-

ture, the prosecutor should be more careful in the wording of his argument.

■ We do not agree that this single comment by the prosecutor requires reversal and remand for a new trial, however. The cases defendant cites, and others which reverse based on comments in closing argument, involve situations in which the conduct was egregious because, for example, the prosecutor continued to make inappropriate comments despite the trial court's repeated orders to stop. *See State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 528 (1947). Here, by contrast, the prosecutor's remark was an isolated one and was not emphasized. "[B]rief, isolated, nonrepetitive remarks of state counsel in closing remarks rarely call for plain error relief." *Higgins*, 619 S.W.2d at 96.

Moreover, here, there was substantial evidence of guilt, including the presence of defendant's fingerprint on the ammunition and a footprint matching his on the door of one of the houses. David Kincaid had also implicated defendant in the burglaries on a number of occasions. *Thomas* itself found that the prosecutor's isolated comment, even if erroneous, was not prejudicial and could not have improperly inflamed the jury in light of the significant other evidence of guilt. *Thomas*, 780 S.W.2d at 134–35. *See also State v. Collins*, 520 S.W.2d 155, 157 (Mo.App.1975). That reasoning is particularly applicable where, as here, we review solely for plain error. Because we cannot say that "the State's remarks had a decisive effect on the jury," *State v. Davis*, 825 S.W.2d 948, 952 (Mo.App.1992), we reject Point I.

### III. ADMISSIBILITY OF TESTIMONY REGARDING MS. WIBLE'S KNOWLEDGE WHETHER MR. ARMSTRONG GAVE ANYONE PERMISSION TO ENTER OR TAKE ITEMS FROM THEIR HOME

■ Next, defendant argues that the trial court plainly erred and abused its discretion when it allowed Carolyn Wible to testify that, "to her knowledge," her boy-

friend Mr. Armstrong did not give anyone permission to enter or remove anything from their residence. He claims that Ms. Wible's testimony was offered to prove the unlawful entry element of burglary and stealing and that it thus is inadmissible hearsay. As the State notes, however, defendant did not object to the testimony at trial, and therefore, any error in its admission it is not preserved for appeal. *State v. Walden*, 861 S.W.2d 182, 187 (Mo.App.1993).

■ The defendant requests that we review for plain error. We decline to do so. The admission of unobjected-to hearsay almost never rises to the level of plain error. *Id.* It certainly did not do so on the facts of this case. The alleged hearsay [1] concerned only whether Mr. Armstrong gave anyone permission to enter the home. Defendant did not claim that Mr. Armstrong gave him permission to enter the home, however; his defense was one of mistaken identity and denial of any involvement with the burglary and stealing. Therefore, whether or not Mr. Armstrong gave anyone permission to enter his home was irrelevant, and admission of evidence on this issue could not have prejudiced defendant.

For all these reasons, we affirm.

HANNA, P.J., and EDWIN W. SMITH, J., concur.

---

1. In fact, it is questionable whether her testimony was hearsay at all. The prosecution specifically indicated, in response to defendant's objection, that he was only asking whether "to her knowledge," Mr. Armstrong had given permission to others to enter, emphasizing that he only wanted her to testify to her personal knowledge.