**STATE of Missouri, Respondent,**

v.

**James O. RIGGINS, Appellant.**

**No. WD 54924.**

Missouri Court of Appeals, Western District.

Feb. 16, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1999.

Daniel John Ross, Kansas City, for appellant.

John Munson Morris, Jefferson City, for respondent.

Before Presiding Judge ALBERT A. RIEDERER, Judge HAROLD L. LOWENSTEIN and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant James Riggins appeals his conviction of second-degree murder,

in violation of Section 565.021.1,[1] for which he was sentenced to a term of life imprisonment. Defendant claims the trial court erred: (1) in denying his motion for mistrial based on four unsolicited comments made by witnesses which, he alleges, made improper references to other uncharged crimes, and (2) in refusing to admit hearsay testimony which, he argues, was material to his defense that the victim was seen after the date of her alleged death.

We find the trial court did not abuse its discretion in denying defendant's motion for mistrial because the answers alluding to other crimes were voluntary, isolated, and vague and because the court avoided undue prejudice by sustaining objections to the answers and immediately instructing the jury to disregard the witnesses' comments. We further find the trial court did not abuse its discretion in refusing to admit evidence that a third party told the witness he had talked with the victim after the date she allegedly died because it was hearsay and no hearsay exception applied, and because defendant could have called the alleged declarant to testify about the statement, but failed to do so. The judgment is affirmed.

## I. FACTUAL AND PROCEDURAL HISTORY

The sufficiency of the evidence of second-degree murder is not challenged. In March 1996, the Kansas City Police Department received information through the TIPS hotline that the body of Jackie Boydston, who had been missing for approximately one year, was located in a well at 14611 Prospect. The tip also mentioned that the victim may have been strangled and identified the defendant as a suspect.

The Kansas City Homicide Unit followed up on this information and on March 27, 1996, they found a body wrapped in plastic covers and a comforter located in a well on the property at 14611 Prospect. The body was transported to the Jackson County Medical Examiner's Office. Fingerprints taken from the hands of the corpse were identified to be those of Jackie Keefe Boydston. The autopsy report concluded that the cause of death was undetermined violence, as the decomposition of the body masked the exact process by which the violence occurred. Additional information obtained through the TIPS hotline and subsequent investigations led the police to charge defendant with the murder of Jackie Boydston.

Defendant was tried for second-degree murder before a jury on June 9, 1997. At trial, the State produced witnesses who testified that defendant was involved with Ms. Boydston off and on during 1994 and 1995, and that she visited defendant at his residence at 14611 Prospect during that time. Defendant's old roommate, Shannon LeHotta, testified that in May 1995, defendant was robbed at gun-point by three individuals who entered their residence. Mr. LeHotta also testified that defendant showed him a body wrapped up in a quilt and told him it was Ms. Boydston's body because she was the person who set them up to be robbed. Mr. LeHotta further testified that in June 1995 defendant told him Ms. Boydston admitted she set them up to be robbed before he choked her to death and dumped her body in the well at his house.

Two other witnesses, Lorna Henderson, defendant's old girlfriend, and Mark Edwards, another old roommate, also testified for the State. Both witnesses testified that defendant admitted to them that he strangled Ms. Boydston to death, and Mr. Edwards testified defendant told him he threw the victim's body into the well behind his residence after killing her. At the close of the evidence, the jury found defendant guilty of second-degree murder. After finding defendant to be a prior and persistent offender, the trial court sentenced him to life imprisonment.

## II. STANDARD OF REVIEW

We review the trial court's determination for prejudicial error, and will reverse only if we find an error, which was so prejudicial that it deprived the defendant of a fair trial. *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). We review the facts in the

1. All statutory references are to RSMo 1994, unless otherwise indicated.

light most favorable to the verdict. *Id.* We will reverse the admission of evidence only if the trial court clearly abused its discretion. *Id.,citing, State v. Simmons,* 944 S.W.2d 165, 178 (Mo. banc 1997).

### III. THE TRIAL COURT DID NOT ERR IN DENYING DEFENDANT'S MOTION FOR MISTRIAL

Defendant argues that the court erred in refusing to grant a mistrial after several comments referring to other uncharged crimes were made at trial. Defendant asserts the following testimony amounts to evidence of other uncharged crimes: (1) Shannon LeHotta's statement that he met defendant while they were both in prison, (2) Shannon LeHotta's statement that defendant had given the victim a shot prior to her strangulation, (3) Lorna Henderson's statement that the victim had shorted defendant in a "deal," and (4) Detective Robert Delameter's statement that he interviewed defendant while he was in jail on another charge. Defendant argues that the trial court's failure to grant a mistrial based on the above evidence of uncharged crimes resulted in "prejudicial injustice" because it made the jury more likely to convict him based on reputation rather than on the evidence presented of the crime charged.

■ Criminal defendants have a right to be tried only for the offense for which they are charged. *State v. Hornbuckle,* 769 S.W.2d 89 (Mo. banc 1989). If evidence is introduced showing that the defendant has committed, been accused of, been convicted of, or been definitely associated with another crime or crimes, a defendant's rights may have been violated and a new trial may be required.[2] *Id.* A mistrial is a drastic remedy, however, which should be granted only in extraordinary circumstances. *State v. Johnson,* 901 S.W.2d 60, 62 (Mo. banc 1995). Because the trial court is in a better position to observe the evidence and its impact, the granting of a mistrial largely rests within its sound discretion. Therefore, on appeal, we look only to determine whether the evidence of other crimes was so prejudicial that the trial court abused its discretion in refusing to grant a mistrial. *Id.*

■ In analyzing the prejudicial effect of an uninvited reference to other crimes evidence, Missouri courts examine the following five factors:

1) Whether the statement was, in fact, voluntary and unresponsive [to the prosecutor's questioning if the prosecutor asked the question] ... or whether the prosecutor "deliberately attempted to elicit" the comments;

2) Whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution;

3) Whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused;

4) Whether the court promptly sustained defense counsel's objection to the statement, ... and instructed the jury to disregard the volunteered statement; and

5) Whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment, "played a decisive role in the determination of guilt."

*State v. Knowles,* 946 S.W.2d 791, 794 (Mo. App.1997); *State v. Silas,* 885 S.W.2d 716, 720 (Mo.App.1994).

#### A. Statement Witness Knew Defendant "From The Penitentiary"

■ *During the State's direct examination of witness Shannon LeHotta, the prosecutor asked him the following:*

Q. And while you were here in Kansas City, did you know the defendant in this case, James Riggins?

A. Yes, ma'am.

Q. **And how did you know him?**

A. **I knew him from the penitentiary.**

---

**2.** Exceptions to the general rule permit the admission of evidence that tends to establish motive, intent, the absence of mistake or accident, a common plan or scheme, or which establishes a complete and coherent picture of the events surrounding the crime charged. *State v. Morrow,* 968 S.W.2d 100, 107 (Mo. banc 1998).

Q. Well let me ask you this: You met him in the past?

A. *Yes.*

(emphasis added). At trial, defense counsel requested a mistrial based on the above reference to the penitentiary, but the trial court denied counsel's request. The court did, however, specifically strike the comment and instruct the jury to disregard it. Defendant asserts that this instruction could not cure the prejudice resulting from the comment that the witness knew defendant "from the penitentiary," and that a mistrial was required.

Application of the five-factor test set out above leads us to conclude to the contrary. First, there is no evidence in the record that the prosecutor intended to elicit this reference to defendant's previous incarceration. To the contrary, as the prosecutor noted to the court, the prosecutor had twice told the witness not to mention the fact that defendant had been in the penitentiary. Defense counsel affirmed that he had actually heard the prosecutor admonish the witness not to mention defendant's imprisonment. The witness' response was completely voluntary and unsolicited.

Second, the statement was singular and isolated. Mr. LeHotta was the only witness to voluntarily make reference to defendant being in the penitentiary. After Mr. LeHotta's response, the prosecutor made no further reference to the possibility that defendant had previously been incarcerated and did not magnify the comment in any way. In fact, after Mr. LeHotta made the comment, the prosecutor attempted to cut the witness off and lead him in another direction. The only other references to the comment were the court's instruction to the jury that the answer was stricken and that they were to disregard it.

Third, the witness' remarks about knowing defendant "from the penitentiary" were vague and indefinite as they did not show what crime defendant had been accused of, or that he was convicted of any other crime. When comments do not make specific reference to other crimes committed by the accused, the action of the trial court in denying a motion for mistrial does not constitute reversible error. *State v. Rhodes*, 829 S.W.2d 41, 44 (Mo.App.1992).

Fourth, as noted above, the court promptly sustained the objection and instructed the jury to disregard it.

Finally, and most importantly, the State's case against defendant was strong. There were three witnesses who testified that defendant admitted to them that he had killed the victim and dumped her body in the well where she was found. One witness even testified that defendant showed him a body and told him it was the victim because she was the one who set him up to be robbed. Based on the strength of the evidence of guilt admitted at trial, and because the minor reference to the penitentiary was very brief, was not emphasized, did not refer to a specific crime, and the court promptly instructed the jury to disregard the comment, we find that any undue prejudice was avoided and a mistrial was not warranted.[3]

## B. Statement Defendant Was Questioned While In Jail For A Different Charge

Defendant also alleges prejudicial error resulted from Detective Delameter's statement on cross-examination that defendant was in jail for a different charge when the detective interviewed him. Again, we disagree. The record shows the statement was made in answer to questioning by defense counsel, as follows:

Q .... you interviewed him [defendant] on April 2, 1996, right?

---

**3.** *See State v. Knowles*, 946 S.W.2d 791 (Mo.App. 1997) (comment from witness alluding to a defendant's other crimes was not unduly prejudicial where prosecutor did not intend to elicit the remark, statement was isolated and vague, and the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement); *State v. Smith*, 934 S.W.2d 318 (Mo.App.1996) (witness' answer regarding knowledge of other arrests was determined to be voluntary and isolated, and when considering the strength of the case against the defendant, it was not prejudicial); *State v. Silas*, 885 S.W.2d 716 (Mo.App.1994) (answer alluding to other crimes was voluntary, isolated, and vague and because court sustained objection to answer and immediately instructed jury to disregard statement, it was not prejudicial).

A. Yes.

Q. The body had already been found, correct?

A. Yes.

Q. Everybody in the world that has a TV set or newspaper in Kansas City knew a body had been found in the well at that location, correct?

A. **I didn't know he did, because he was in jail in Jackson County at the time.**

Q. **Arrested on this?**

A. **No.**

(emphasis added). Defendant argues the reference to the fact that he was in jail for a different charge was unduly prejudicial because it was evidence of a prior conviction and incarceration. It was defense counsel who elicited the fact he was in jail on a different charge, however, by specifically asking the witness if defendant had been arrested in the current case. Although defense counsel tried to remove the witness' statement from the record as non-responsive, the court denied this request, as the answer was in fact responsive to counsel's question.

▮ A defendant cannot invite error and then raise it as reversible error on appeal. *State v. Radley*, 904 S.W.2d 520, 523 (Mo. App.1995); *State v. Collier*, 892 S.W.2d 686, 691–692 (Mo.App.1994). Because it was defense counsel who solicited the response from the witness, the denial of a mistrial was not erroneous. *Id.*

*C. Statement Defendant Gave The Victim "A Shot Of —" Before Strangling Her*

▮ Defendant next argues that another statement made by Mr. LeHotta during his direct examination resulted in prejudicial error because it contained an inference of drug use. The exchange in question was as follows:

PROSECUTOR: And did you talk—did he talk to you about what had happened with Jackie?

WITNESS: Yeah.

PROSECUTOR: **And what did he tell you?**

WITNESS: **He told me that he had strangled her. He was—gave her a shot of -**

DEFENSE COUNSEL: May we approach the bench, Your Honor?

(emphasis added). Defense counsel moved for a mistrial based on the above response, arguing the only implication from the answer, "gave her a shot," was the connotation that defendant gave her a shot of methamphetamine. The court denied defendant's request for a mistrial, but granted his request for an instruction to the jury to disregard the comment.

Here, we cannot say the witness' comment referring to a "shot of" was unduly prejudicial. To the contrary, this comment is so vague it does not clearly associate defendant with a crime. The shot spoken of could have been a shot of whiskey or some prescription medication, not narcotics as defendant alleges. Similarly, the record shows the prosecutor did not intend to elicit such a response. Rather, the transcript shows she immediately asked the judge for a recess in order to confer with the witness, stating that she had told the witness on at least two occasions not to get into the issue of drugs. The statement was also singular and completely unsolicited. The prosecutor made no further reference to the shot defendant may have given the victim and did not magnify it in any way. Here, also, the court instructed the jury to disregard the comment.

▮ Furthermore, even if the jury inferred that defendant gave the victim a shot of illegal drugs before killing her, this act would not be evidence of other unrelated crimes, but rather part of the circumstances or the sequence of events surrounding the crime, which is admissible to present to the jury a complete and coherent picture of the crime charged. *State v. Morrow*, 968 S.W.2d 100, 107 (Mo. banc 1998). For both of these reasons, failing to award a mistrial based on this comment was not error.

*D. Statement The Victim Had "Shorted" Defendant On A Deal*

▮ Last, defendant asserts the following line of questioning by the prosecutor resulted in prejudicial error:

Q. What was it you heard the defendant say?

A. .... he [Shannon LeHotta] helped, I guess, get Jackie there. And James did the killing. And as long as, you know, Shannon didn't tell on James, James wouldn't, and then neither one of them would get in trouble, no one would know anything.

Q. That's what you heard them talking about?

A. Yes.

Q. All right. Now, what did—when you say Shannon getting Jackie there, I don't understand what you mean.

A. I guess she—she was I guess he'd like, it—it was over some deal that had been made, and **I guess she didn't produce what she was supposed to produce, and she shorted them, and I guess—**

DEFENSE COUNSEL: Your Honor, may we approach?

(emphasis added). Defense counsel objected to the answer and requested a mistrial, arguing that the statement the victim "shorted" defendant in a deal was prejudicial because it created an inference that he was involved in drug trafficking and hinted at the presence of his involvement in a drug culture. The court overruled defense counsel's objection and denied his request for mistrial.

■■■ We find no error in the trial court's ruling. The statement that the victim "shorted" defendant is vague, as it does not expressly refer to any criminal activity. The witness did not say defendant had been shorted on a drug deal, but only that defendant had been shorted on a deal. It could have been an entirely legal deal. Equally important, this testimony was admissible because it is relevant to the motive for the crime charged, as it establishes a reason why defendant would want to harm the victim. Evidence of other crimes relating to motive falls within one of the exceptions to the general rule that excludes evidence of other uncharged crimes. *See State v. Morrow,* 968 S.W.2d at 107 (evidence of uncharged crimes is admissible to establish motive, intent, the absence of mistake or accident, or a common plan or scheme). Thus, we hold the admis-

sion of the evidence adduced above was not unduly prejudicial and the court was not further required to declare a mistrial.

*IV.  EXCLUSION  OF  THIRD–PARTY HEARSAY*

Defendant next argues that that court erred in excluding evidence that the victim's ex-husband told his girlfriend that he had talked with the victim after the date the State alleges she died. Defendant argues the State introduced this same evidence on direct examination of the witness earlier in the trial, and that he should have been permitted to do so also on cross-examination.

The testimony at issue is as follows:

Q. Did you tell anyone else about what you had heard, about the defendant strangling Jackie?

A. I had talked with, like her ex-husband and people like that about it. You know we had discussed it many times.

Q. Did he know about it when you talked to him?

A. I just said that I thought it was more than her just leaving town. And he kept telling me, you know, trying like – I guess its. because maybe he really didn't care at the time, because they fought a lot, but **he [Jackie's ex-husband] would tell me she [Jackie] had called and stuff.**

(emphasis added). During cross-examination of the witness, defendant tried to inquire about the telephone calls the victim's ex-husband discussed with the witness, but the State objected to the question as calling for hearsay and the court sustained the State's objection.

Defendant now argues the trial court erred in excluding the testimony because (1) the State waived their objection to the testimony because they first introduced the evidence, and (2) the testimony was necessary to his defense that the victim had been seen alive after the date the State established as her time of death.

■■■ We find the court did not err in excluding this evidence. First, the evidence was hearsay and no hearsay exception is

shown to be applicable. Second, the fact that a hearsay statement on this subject was admitted during the State's direct examination of the witness does not mean the State waived its objection to the evidence on cross-examination of the witness. Here, the hearsay statement made on direct examination of the witness was a volunteered, unsolicited remark. Defendant failed to object to the remark, so the testimony was admitted. *State v. Newson*, 898 S.W.2d 710, 715 (Mo. App.1995) (inadmissible hearsay that goes on record without objection may be considered by the jury). The court's exclusion of further inquiry into the witness' hearsay statement was not prejudicial in that the exclusion was of evidence identical to evidence that had already been admitted on direct examination. *State v. Wells*, 940 S.W.2d 30, 33–34 (Mo. App.1997).[4] Finally, as defendant admits, he could have called the alleged declarant to the stand to question him about the phone calls, but he failed to so. Therefore, no reversible error is found.

The judgment is affirmed.

RIEDERER, P.J., concurs.

LOWENSTEIN, J., dissents in a separate dissenting opinion.

LOWENSTEIN, Judge, dissenting.

I respectfully dissent, and would reverse on the basis of witness LeHotta's answer about knowing the accused from the penitentiary. The entire colloquy on this point is as follows:

[Prosecutor]Q: And while you were here in Kansas City, did you know the defendant in this case, James Riggins?

[LeHotta] A: Yes, ma'am.

Q: And how did you know him?

A: *I knew him from the penitentiary.*

Q: Well, let me ask you this: You met him in the past?

A: Yes.

[Defense Counsel]: Your honor, may we approach?

[The following proceedings took place at the bench].

[Defense Counsel]: Your Honor, I move for a mistrial at this time. He just indicated that he met James Riggins in the penitentiary. The whole purpose of our client not testifying was to avoid any reference to his having any criminal conviction. This juror or the jurors have now been advised that he has a criminal record.

[Prosecutor]: Well, I cut him off when I saw it coming. And I had advised him not to get into that. I advised him twice, so I don't think it's grounds for a mistrial by any means. And I'm going to move right on, there's not going to be anything more about it.

[Defense Counsel]: I'm not suggesting you did it on purpose. I know I heard you tell him.

[Prosecutor]: I know.

[Defense Counsel]: He said it anyway. He said it very clearly and expressly. And it just destroyed our—a significant strategic use of my client's—or the bottom line, is the jury now knows that which we had very purposely tried to avoid, that my client has a penitentiary record. That affects, that's devastating to our case. And no, I don't believe a— an instruction to disregard is going to save the prejudice that's now going to result, and move for mistrial.

Whether solicited or not, even as a one-time statement to the jury which was quickly acted upon, I do not see how the prejudice created of telling the jury the defendant was a prior felon could be erased. Trial courts should be wary of evidence of other crimes due to the highly prejudicial character of such evidence. *State v. Helm*, 892 S.W.2d 743, 744 (Mo.App.1994). Evidence of other

---

**4.** We note that the doctrine of curative admissibility does not apply where, as here, the improperly admitted hearsay evidence by the State's witness was favorable to defendant, not prejudicial to him. In this circumstance, there was no need to allow defendant to admit rebuttal hearsay to cure any prejudice resulting from admitting the hearsay offered by the State. *See, e.g., Gevermuehle v. Geimer,* 619 S.W.2d 320, 322 (Mo.App.1981); *Cato v. Modglin,* 545 S.W.2d 307, 312 (Mo.App.1976); *Ferguson v. Missouri Pac. R.R. Co.,* 442 S.W.2d 549, 555 (Mo.App. 1969).

crimes should be utilized only when there is strict necessity. *Helm*, 892 S.W.2d at 744. Testimony of a defendant's prior days in a penitentiary leads to no other conclusion by the respective jurors except that he had committed a felony, and could "raise a legally spurious presumption of guilt in the minds of the jurors." *State v. Sladek*, 835 S.W.2d 308, at 311. (Mo.Banc. 1992).

"The defendant in a criminal case has the right to be tried only for the crime with which he is charged. Evidence of offenses unrelated to the cause on trial violates that right as it may result in a conviction based upon crimes for which the defendant is presently not being tried." *State v. Brooks*, 675 S.W.2d 53, 59 (Mo.App.1984). If the unrelated offense has some legitimate tendency to establish that the defendant is guilty of the crime with which he is charged, it may be admissible. *Id.* In this situation, however, LeHotta's statement about meeting Riggins in the penitentiary simply does not establish that Riggins murdered Jackie Boydston, the crime for which Riggins is charged. Proof of separate and distinct crimes is inadmissible and constitutes error unless it has some legitimate tendency to establish that the defendant is guilty of the crime with which he is charged. *State v. Shaw*, 636 S.W.2d 667, 671–672.

Similar results were reached in *State v. Goodson*, 690 S.W.2d 155 (Mo.App.1985), where appellant contended that the trial court erred in not granting a requested mistrial when the circuit attorney elicited from appellant on cross-examination testimony concerning a crime for which appellant was not charged and not relevant to the crime charged. The court opined that "the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors." *Id.* at 158.

"[T]he reversal of convictions so frequently attributed by the public to excessive judicial attention to technicalities is in reality an effort to preserve the rights of all citizens to

due process of law as guaranteed by the United States and the Missouri Constitutions." *Goodson*, 690 S.W.2d at 155 (Mo.App.1985)(Gaertner, J., concurring).

Although the State argues that the trial court's instruction to disregard the testimony removes the prejudice, the argument should fail because the testimony about the penitentiary clearly associates Riggins with another crime, separate and distinct from the crime for which he is charged. Although such evidence is admissible to prove the crime charged if it establishes motive, intent, the absence of mistake or accident, common scheme or plan, and identity, none of these exceptions apply in this situation. Even though the testimony was not directly elicited by the prosecutor, and even though the evidence of guilt here was strong, there is or was no way of erasing the effect of the jury hearing that the defendant was a convicted felon. The statement here could have not rung with any more clarity—the defendant had been in the penitentiary; he was a convicted felon. There was nothing indefinite— the defendant had not merely been suspected, arrested, gone uncharged or been acquitted. The defendant was in the penitentiary, where the worst offenders in Missouri are incarcerated. Promptly sustaining the objection and instruction to disregard did not remove the sting.

Based on this error, I would reverse the conviction and remand for a new trial.