**STATE of Missouri, Respondent,**

v.

**Christopher KENNEDY, Appellant.**

**No. WD 60990.**

Missouri Court of Appeals, Western District.

March 4, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 2003.

Application for Transfer Denied July 1, 2003.

Rebecca L. Kurz, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, John M. Morris, III, and Joel A. Block, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Christopher Kennedy appeals his convictions for murder in the second-degree, pursuant to section 565.021, RSMo 2000; assault in the first-degree, pursuant to section 565.050, RSMo 2000; and armed criminal action, pursuant to section 571.015, RSMo 2000. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a shooting that occurred outside of a Kansas City, Missouri, nightclub. On October 3, 1999, Frederick Darrington, Ryan Pearson, Rodja Pearson, and Raphael Pearson attended a comedy show at the Beaumont Club. As they walked away from the club after the show, shots rang out. Three bullets struck Frederick Darrington, who died at the scene. One bullet struck Ryan Pearson in the head. He died three days later at a hospital. Rodja Pearson suffered a gunshot wound to the leg but died of unrelated injuries before trial. Raphael Pearson escaped physical injury.

Several people witnessed the shootings, and three of them identified Mr. Kennedy as the culprit. Raphael Pearson identified Mr. Kennedy from a police photographic array four days after the shooting. At trial, he recalled seeing two people brandishing a large gun and firing it. He harbored "no doubt" that Mr. Kennedy was one of the people shooting the gun and that Mr. Kennedy was the person who murdered his brother. He testified that he had seen Mr. Kennedy in the nightclub earlier in the evening and had known Mr. Kennedy several years earlier as a "drinking buddy."

Darren Miller identified Mr. Kennedy from a police photographic array on the evening after the shooting. On the night of the shooting, Mr. Miller was a bystander in the area. Unlike Raphael Pearson, Mr. Miller saw only one shooter. But he was positive that Mr. Kennedy was the shooter. He observed Mr. Kennedy's face from a distance of four to five feet and between fifteen and thirty seconds.

In an interview with police Sergeant Jay Pruetting on the morning after the shooting, Rodja Pearson also identified Mr. Kennedy as the killer. Although the trial court recognized that Rodja Pearson's statement to Sergeant Pruetting would be hearsay if offered to prove the truth of the matter asserted, the trial court allowed the admission of the statement for the limited purpose of explaining why the police developed Mr. Kennedy as a suspect in the case.

Over Mr. Kennedy's objection, the trial court also allowed the State to present motive evidence pertaining to a 1992 shooting in which Mr. Kennedy was the victim. Although the police never charged a suspect or determined who shot Mr. Kennedy in 1992, they did identify Rodja Pearson as a suspect in that case. The State reasoned that this evidence suggested a possible motive for the 1999 shootings, in which Rodja Pearson was one of the victims.

After hearing the evidence, the jury convicted Mr. Kennedy of two counts of second-degree murder, one count of first-degree assault, and three counts of armed criminal action. The trial court imposed the following sentence: (1) life imprisonment for second-degree murder (Count I); (2) twenty-five years' imprisonment for armed criminal action (Count II), to run concurrently with Count I; (3) life imprisonment for second-degree murder (Count III), to run consecutively to Counts I and II; (4) twenty-five years' imprisonment for armed criminal action (Count IV), to run concurrently with Count III and consecutively to Counts I and II; (5) fifteen years' imprisonment for first-degree assault (Count VII), to run consecutively to Counts I, II, III, and IV; and (6) twenty-five years' imprisonment for armed criminal action (Count VIII), to run concurrently with Count VII and consecutively to Counts I, II, III, and IV.

Mr. Kennedy raises two points on appeal. In his first point, he contends that the trial court abused its discretion in admitting evidence of the 1992 shooting where Mr. Kennedy was a victim. Mr. Kennedy reasons that this evidence was too remote and inconclusive to establish a motive for the 1999 shootings. He points out that he identified a person other than Rodja Pearson as the man who shot him in 1992.

In his second point, Mr. Kennedy requests that this court review for plain er-

ror several comments made by the assistant prosecuting attorney during closing argument. He contends that these comments unfairly prejudiced him and that the trial court should have declared a mistrial *sua sponte* or at least admonished the assistant prosecutor and instructed the jury to disregard the comments. He challenges four different comments: (1) the State's reference to Rodja Pearson's hearsay identification of him as the perpetrator; (2) the State's reference to defense counsel as "Mr. Talking Loud, But Saying Nothing"; (3) the assistant prosecutor's reference to Mr. Kennedy as "evil" and an "executioner"; and (4) the assistant prosecutor's inflammatory appeals to jurors' emotions.

## II. Standard of Review

We review Mr. Kennedy's first point, challenging the trial court's admission of the motive evidence, solely to determine whether the admission of that evidence amounted to an abuse of discretion. *State v. Danikas*, 11 S.W.3d 782, 788 (Mo.App. W.D.1999). "The decision to admit evidence is an abuse of discretion where it is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* (internal quotation marks and citation omitted).

Mr. Kennedy has not preserved his second point for appeal. To the extent that Mr. Kennedy's second point warrants review, we can review it only for plain error.

## III. Legal Analysis

### A. The Trial Court Did Not Abuse its Discretion in Admitting the State's Motive Evidence

"Evidence must be relevant to be admissible." *State v. Shurn*, 866 S.W.2d

447, 457 (Mo. banc 1993). In Missouri, relevance has two aspects: logical relevance and legal relevance. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* While evidence must be logically relevant, it need not be conclusive; it is relevant as long as it "logically tends to prove a fact in issue or corroborates relevant evidence which bears on the principal issue." *State v. Mercer*, 618 S.W.2d 1, 9 (Mo. banc 1981). To be admissible, logically relevant evidence also must be legally relevant. *Anderson*, 76 S.W.3d at 276. Legal relevance refers to the probative value of the evidence weighed against its costs, including unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.* Evidence is legally relevant if its probative value outweighs its prejudicial effect. *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001). *See also State v. Williams*, 976 S.W.2d 1, 4 (Mo.App. W.D.1998).

 When the accused proclaims his innocence, evidence regarding motive, or absence of motive, is logically relevant and admissible. *Shurn*, 866 S.W.2d at 457. The State and the accused alike have wide latitude in developing such motive evidence. *Id.*

 To the extent that the motive evidence is remote, its remoteness normally affects the weight attached to the evidence rather than its admissibility; but evidence can be so remote as to be inadmissible. *State v. Maddox*, 657 S.W.2d 719, 721 (Mo.App. E.D.1983). By itself, the passage of time does not render evidence inadmissible due to remoteness. *State v. Branch*, 757 S.W.2d 595, 598 (Mo. App. E.D.1988); *Mid-American Lines, Inc. v. Littrell*, 653 S.W.2d 391, 393 (Mo. App. W.D.1983).

 To establish a defendant's motive for murdering someone, the State may rely upon testimony that the victim previously crossed the defendant in some manner. *State v. Riggins*, 987 S.W.2d 457, 464 (Mo.App. W.D.1999). In *Riggins*, the trial court admitted testimony that a murder victim had "shorted" the defendant on a deal sometime before the victim's murder. *Id.* Affirming the trial court's admission of the evidence, we said:

> We find no error in the trial court's ruling. The statement that the victim "shorted" defendant is vague, as it does not expressly refer to any criminal activity [on the defendant's part in a drug transaction]. The witness did not say defendant had been shorted on a drug deal, but only that defendant had been shorted on a deal. It could have been an entirely legal deal. Equally important, this testimony was admissible because it is relevant to the motive for the crime charged, as it establishes a reason why defendant would want to harm the victim.

*Id.*

The evidence in this case likewise establishes a potential motive for murder: revenge for the 1992 shooting. The evidence was undoubtedly old, arising from a shooting that occurred seven years before the charged crimes. But as *Branch* and *Littrell* show, that fact alone does not make it inadmissible. *Cf. State v. Coleman*, 857 S.W.2d 363, 366 (Mo.App. E.D.1993) (evidence of ten-year-old uncharged acts was not too remote to be admissible). Indeed, a shooting victim would be expected to remember such an event for a long time afterward. In *State v. Smith*, 791 S.W.2d 744 (Mo.App. E.D.1990), the court approved the admission of evidence that a murder defendant had shot at the victim six months before the murder, rejecting

the contention that this evidence was too remote. *Id.* at 746–47. In so doing, the court said:

> The shooting at another human being is an incident, fortunately, still considered a deviation from the norm. Sensibly considered, a great deal of time is necessary to wash the causes of a prior shooting from the mind of the perpetrator. Without more, six months is not an unusual length of time for a prior shooting to be relevant to a present intent to shoot.

*Id.* at 747.

So too, a "great deal of time is necessary to wash" a prior shooting from the victim's mind. If Rodja Pearson actually shot Mr. Kennedy in 1992, Mr. Kennedy would not be expected to forget that fact.

 We recognize that the police merely identified Rodja Pearson and another man as suspects in the 1992 shootings, but never charged them or otherwise established who shot Mr. Kennedy. We further recognize that Mr. Kennedy identified another man as the person who actually shot him in 1992. But Mr. Kennedy also conceded that he was in Rodja Pearson's house during the 1992 shootings and that Rodja Pearson shot his "cousin by marriage," Walter Watts,[1] at that time.[2] To the extent that Mr. Kennedy argues that his testimony contradicted the motive evidence, his testimony affects the weight, but not the admissibility, of the motive evidence. The jury was free to believe all, some, or none of the testimony. *State v. Hargrave,* 915 S.W.2d 387, 389 (Mo.App. W.D.1996).

Because the motive evidence was both logically and legally relevant, we cannot say that the trial court abused its discretion in admitting the evidence. Point one is denied.

## B. Comments Made During Closing Argument

In his second point, Mr. Kennedy complains about several comments made by the State during closing argument. Acknowledging that he has failed to preserve his second point for appeal, Mr. Kennedy requests that we review it for plain error. In our discretion we may review plain errors "affecting substantial rights" when we find that "manifest injustice or miscarriage of justice has resulted" from the error. Rule 30.20.[3]

The exercise of this discretion analytically involves two steps. First, we determine "whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." *State v. Bozarth,* 51 S.W.3d 179, 181 (Mo.App. W.D.2001). If the claim of error does not meet these criteria, we should decline to exercise discretionary review under Rule 30.20. *Id.* If the claim does meet these criteria, we then proceed to step two, where we review the claim "to determine whether manifest injustice or a miscarriage of justice actually occurred."

---

1. Mr. Kennedy identified Mr. Watts as "my cousin through marriage from my mother's brother, Glen Kennedy and my Aunt Brenda. He's not real, you know, family, kin, blood, but through marriage he's a cousin of mine."

2. Even if Rodja Pearson did not shoot Mr. Kennedy in 1992, the evidence pertaining to the 1992 shootings still could furnish a motive in this case given the close relationship between Mr. Kennedy and the other victim of the 1992 shootings, Mr. Watts. "[I]f the evidence is competent under any theory, or for any purpose, the trial court did not commit error in admitting it." *State v. Kidd,* 990 S.W.2d 175, 180 (Mo.App. W.D.1999).

3. Unless otherwise indicated, all rule references are to Missouri Supreme Court Rules of Criminal Procedure (2002).

*Id.* Not all-prejudicial error is plain error. *Id.* Plain error is "evident, obvious and clear" error. *Id.*

To warrant relief under plain error review, Mr. Kennedy must show more than prejudice resulting from the error; he must show " 'manifest prejudice affecting [his] substantial rights.' " *State v. Kidd,* 75 S.W.3d 804, 812 (Mo.App. W.D.2002).

■■■■ "Furthermore, courts hesitate to find plain error in a failure to *sua sponte* correct a statement made during closing arguments because 'trial strategy looms as an important consideration in deciding whether to object during closing argument.' " *State v. Cruz,* 971 S.W.2d 901, 903 (Mo.App. W.D.1998) (quoting *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994)). "The court, therefore, runs the risk of creating error if it interferes with argument *sua sponte.*" *Id.* For this and similar reasons, Mr. Kennedy's complaints about closing argument justify relief only if the trial court committed error which had a decisive effect on the jury. *Id.* Mr. Kennedy has the burden of demonstrating such a decisive effect. *Id.*

Applying this framework, we discern two prosecutorial comments that facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred and two that do not establish such grounds. We first address the two comments that do not establish such grounds.

## C. Comments Directed at Defense Counsel

■■■ Mr. Kennedy contends that the assistant prosecuting attorney improperly maligned defense counsel during closing argument by characterizing defense counsel as "Mr. Talking Loud But Saying Nothing."

Our courts have distinguished improper personal attacks on counsel from permissible argument directed at counsel's trial techniques and tactics. *See State v. Weaver,* 912 S.W.2d 499, 513–14 (Mo. banc 1995) (argument that defense counsel was creating a "smokescreen," "creating confusion," and being "bold" fell short of accusing counsel of suborning perjury; at most, the comments "were near error which, by definition, is not error."); *State v. O'Haver,* 33 S.W.3d 555, 563 (Mo.App. W.D.2000) (prosecuting attorney's isolated reference to defense counsel's "slick lawyering" were directed at tactics or techniques, rather than character or integrity, and was not unduly prejudicial); *State v. Ward,* 807 S.W.2d 225, 226 (Mo.App. E.D.1991) (characterization of defense argument as "trickery" did not imply that defense counsel was personally dishonest) *Cf. State v. Lyles,* 996 S.W.2d 713 (Mo.App. E.D.1999) (although prosecuting attorney improperly argued that defense counsel was either confused, lying, or trying to mislead the jury, the remark was isolated and not sufficiently noticeable or prejudicial to warrant reversal for plain error).

Although the prosecutor's characterization of defense counsel as "talking loud but saying nothing" was unflattering, it was not impermissible. As the State argues, it amounted to a declaration that Mr. Kennedy's defense "contained sound, but no substance." This declaration falls within the permissible scope of argument set forth in *Weaver, O'Haver,* and *Ward.* Unlike the prosecuting attorney in *Lyles,* the assistant prosecuting attorney in this case did not argue that defense counsel was lying to the jury, but that he did not have anything meaningful to say.

## D. Comments Directed at Mr. Kennedy

■■■ Mr. Kennedy contends that the assistant prosecuting attorney improperly

maligned him during closing argument by characterizing him as "evil" and an "executioner." Again, this commentary may be unflattering, but it is not necessarily impermissible given the evidence presented in the case. *See, e.g., State v. Simmons,* 944 S.W.2d 165, 182 (Mo. banc 1997) (no error in characterizing murder defendant during guilt phase of closing argument as a "predator" who had an "evil mind" where characterizations were supported by evidence that defendant pre-meditated victim's death and threw victim from a bridge); *State v. Johnston,* 957 S.W.2d 734, 754 (Mo. banc 1997) ("References to defendants as 'animals' or 'monsters' do not form the basis for a reversal when the characterization is supported by evidence."); *State v. Yarbrough,* 506 S.W.2d 90, 93–94 (Mo.App.1974) (prosecutor did not exceed bounds of legitimate argument by characterizing defendant as a self-styled judge, jury, and executioner where prosecutor relied on inferences from record to support characterization and tried to convey the seriousness of defendant's conduct). Because it was not impermissible comment, there is no error, plain or otherwise.

We next consider the remaining two comments. Although we conclude that these comments facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred, we further conclude that manifest justice or miscarriage of justice did not actually occur and that Mr. Kennedy has not demonstrated that the comments had a decisive effect on the jury.

## E. Comments Pertaining to Rodja Pearson's Identification of Mr. Kennedy as the Shooter

 Mr. Kennedy contends that the assistant prosecuting attorney improperly referred to Rodja Pearson's hearsay statement identifying Mr. Kennedy as the shooter. "Hearsay statements, or out-of-court statements used to prove the truth of the matter asserted, are generally inadmissible." *State v. Barnett,* 980 S.W.2d 297, 306 (Mo. banc 1998). But "statements that are not offered for the truth of the matter asserted, but rather to explain subsequent actions, are not hearsay." *Id.*

During closing argument, the assistant prosecuting attorney used Rodja Pearson's identification of Mr. Kennedy not just to explain Sergeant Pruetting's "subsequent actions" in developing a photographic array. The argument encouraged the jury to accept Rodja Pearson's statement for the very truth of the matter asserted, i.e., that Mr. Kennedy was the shooter. The assistant prosecuting attorney said:

It's significant that on October 4th, 1999 ... Darren Miller initialed this photograph as this is the man that he saw doing the shooting just the night before at about 10:30 on October 3rd. Then Rodja Pearson, who is now deceased, on October 5th initialed the same photograph, saying this is the guy that did the shooting. This is the guy that shot him. Then Raphael Pearson on October 7th, within three or four days after the shooting, said, That's the guy. He's the one that did the shooting. So it's significant that right away after the shooting occurred three people say this is the man that did the shooting. There's no time to manufacture a story about who did it. They said that within days of the event.

The State's comment was improper. It encouraged the jury to accept Rodja Pearson's statement for the truth of the matter asserted and gratuitously referred to the fact that Rodja Pearson initialed the same photograph of Mr. Kennedy as the other witnesses. The comments were made despite the trial court's very clear ruling

about the limited purpose for which Rodja Pearson's identification of Mr. Kennedy was admissible. It appears that the trial court's rulings were disregarded and not taken seriously. In future cases, actions by counsel for the State should be compatible with the trial court's rulings.

That said, we conclude that the unfortunate remarks did not create manifest injustice or have a decisive effect on the jury, in light of the other significant evidence of guilt. As noted several times already, both Mr. Miller and Raphael Pearson independently and positively identified Mr. Kennedy as the culprit.

### F. Comments Directed at the Jurors Themselves

■■■ Mr. Kennedy finally contends that the State made improper remarks directed at the jurors themselves during closing argument. At one point, the assistant prosecuting attorney declared:

> Ladies and gentlemen, if you do anything close to acquitting this executioner, you will be part of a sham. Your jury service will be something to be embarrassed about. You will have made a mockery of the concept of justice that this beloved family, families have been waiting on since October 3rd, 1999. You will have perverted justice to let an executioner get away with it.

At another point, he declared:

> The only thing necessary for evil to triumph over good is for good people to do nothing. There is a great deal of evil in this courtroom, and he's in the manifestation of Christopher Kennedy. And for you good people to turn your backs and let him go is a perversion of justice.

■■■ The State characterizes these declarations as nothing more than permissible reminders about the need to enforce the law and the attendant consequences of failing to do so. We disagree. While a prosecutor may argue the need for strong law enforcement, *Roberts*, 948 S.W.2d at 593, the assistant prosecuting attorney's comments in this case go beyond appeals to enforce the law. They warn jurors that if they "do anything close to acquitting" the defendant, then they will be part of a "sham" and a "mockery" about which they should feel "embarrassed." *Cf. State v. Thomas*, 780 S.W.2d 128, 135 (Mo.App. E.D.1989) (generally condemning as "unwise and unwarranted" an argument by which prosecutor hypothesized a fictional post-trial conversation between a juror and juror's family members accounting for verdict of acquittal, but concluding that the argument did not require reversal in part because it "focused not on juror embarrassment that may result from an acquittal, but on the fact dispute [in the case]."). Well, in our case, it appears the assistant prosecuting attorney tried to make jurors feel guilty or "embarrassed" if they didn't find the defendant guilty.

These comments regrettably echo the improper appeals condemned by our courts in the past. In *State v. Rousan*, 961 S.W.2d 831 (Mo. banc 1998), the Missouri Supreme Court cautioned against "any suggestion that the jury is weak if it fails to return a certain verdict." *Id.* at 851. In *State v. Edwards*, 60 S.W.3d 602 (Mo.App. W.D.2001), we concluded that the prosecutor's closing argument had "crossed the line." *Id.* at 617. The case was reversed and remanded for a new trial on other grounds, but we admonished the prosecutor to "eschew challenging the jury regarding how it will account to the community for its verdict if it finds the defendant not guilty." *Id.*

And in *State v. Cruz*, we rebuked the prosecutor for arguing that jurors must " 'answer to the community and set the standard.' " 971 S.W.2d at 903. What we

said in *Cruz* bears repeating: "If . . . the prosecutor simply wanted to tell the jury that they should send a message to the community, then, in the future, the prosecutor should be more careful in the wording of his argument." *Id.* at 903–04.

Although we agree with Mr. Kennedy that the assistant prosecuting attorney's comments to the jury were improper and awfully close to the line, we cannot say that they require reversal for plain error. As in *Cruz*, these improper comments appear to have been isolated. 971 S.W.2d at 904. " '[B]rief, isolated, nonrepetitive remarks of state counsel in closing remarks rarely call for plain error review.' " *Id.*

We are aware that lawyers in the heat of litigation can make mistakes or regrettable statements. However, prosecutors should be aware of their responsibility to seek justice by presenting their case in an assertive and yet respectful manner. Making statements that border on intimidation does not help assure justice in our legal system or promote goodwill to jurors.

As in *Cruz*, the State also presented "substantial evidence of guilt." *Id.* The already-mentioned witnesses positively identified Mr. Kennedy as the shooter, and Mr. Kennedy was not prejudiced by the inappropriate remarks of the prosecuting attorney during closing argument. *See also State v. Collins*, 520 S.W.2d 155, 157 (Mo.App.1975) (no plain error in closing argument where there was positive identification of defendant by victim who survived attack).

Point II is denied.

## IV. CONCLUSION

The evidence pertaining to the 1992 shootings was relevant because it furnished a possible motive for the 1999 shootings. The trial court, accordingly, did not abuse its discretion in admitting the evidence. Additionally, although some of the State's comments in closing argument were improper, they did not have a decisive effect on the jury given the positive identification of Mr. Kennedy by two independent witnesses. We therefore affirm the convictions and sentences.

ROBERT G. ULRICH and EDWIN H. SMITH, JJ., concur.